The last case for today is Tecspec, LLC v. Donnolo. All right, we have Mr. Mateo, you have two minutes for a vote, can you hear me okay? Yes, I can hear you, Your Honor. Meltzer, you can hear okay? Yes, Your Honor, thank you. All right, Mr. Mateo, you can begin whenever you're ready. Good afternoon, and may it please the court, my name is Joseph Matteo on behalf of the appellants. Our appeal rests on the proper interpretation of section 25.1 of Tecspec's operating agreement. And in that section, Tecspec's members agree that they could not, quote, carry out or be engaged in any business which competes in whole or in part with the company, unquote, if that business was, quote, located in any county in which the company is doing or has done business, unquote. The district court construed the word business in the phrase, any business which competes to mean a transaction or a project. And we submit that this was reversible error. As a matter of basic grammar, the word business in the phrase business which competes indicates that the business is capable of action. A transaction is not capable of action, but an entity is. That business means an entity is further seen by the fact that Tecspec's members are restricted only from engaging in a business which competes with the company. Transactions do not compete with companies, but other companies do. Therefore, we submit that the use of the word business in the phrase, any business which competes with the company must mean an entity, not a transaction. What about the phrase carrying on? Carrying on business suggests transaction, right? When you use the phrase in combination, on business, any business could mean, I guess, either. But when you say carrying on any business, you're not referring to an entity, right? That wouldn't make any sense. Your Honor, we disagree. Referring to an action, right? Carrying on any business? I apologize, Your Honor. No, it's okay. We disagree, Your Honor. And in fact, this court has used the phrase carrying on business in the sense of a entity, not a transaction, in connection with stating the requirements of forming a joint venture in both the Dynaco case and the ITEL case, which we cite in our papers. So that formulation, carry on, is not limited to a transaction. It can also be- I understand that, but the context of this agreement, it refers to limited liability companies, associations, syndicates. So earlier in the actual covenant, it refers to entities, and then it has this phrase. And you're suggesting that the carrying on business means the same thing as, I think, the earlier phrase, where it talks about corporations, partnerships, firms, right? Entities. But Your Honor, the carrying on, it refers only to the business which competes, not with respect to the entities through which somebody can. I understand that, but I'm just saying there's two different portions of this. One that refers to the entities, and then the phrase carrying on business is used. And you're suggesting it's still referring to an entity at that point, even though it appears to me to be a different phrase. Well, Your Honor, I think that the fact that it means an entity rather than a transaction can be seen from the fact that when the court entered its injunction, it read out the words, which competes entirely, and replaced them with words that are found nowhere in the agreement. Specifically, the court removed the phrase, which competes in whole or in part with the company, and replaced it with the words, activities concerning the manufacturing of HVAC units or any projects. Well, isn't that just the definition of what exactly is involved that would be competing? I mean, you're not gonna say an entity playing baseball, because we would know playing baseball doesn't compete, right? Isn't that just being more particular about what it is, what activities are the competitive ones? Well, not, I disagree, Your Honor, because the words, the court took the words, which competes out of the injunction entirely. My point is that if you have a baseball team with a non-compete clause, saying you can't have another baseball team, and it says, the contract says, and you may not engage in business that competes with me, and the injunction says, thou shalt not engage in baseball activities, that is effectively the court putting in words that are synonymous with what it is that would be competitive in this circumstance, right? Your Honor, but if it was that simple, then the court could have just used the language that the parties had in their agreement. Well, could have, could have, would have, should have. The question is, yeah, they could have used 10 other ways, probably you could phrase an injunction however you like. The question is, was it incorrect? In other words, was the language put in the injunction, not an accurate description of activity that would compete? I think it is, Your Honor, going back to our first point, which is- Putting aside the business versus entity thing, is that description of whatever it was, HVAC activity, does that sweep in non-competitive activity? Putting aside the entity business distinction. I think it does, Your Honor. I think the words manufacturing comes up nowhere in the agreement itself, and it's not germane to the issue. So the court was in trying to work around the idea of a competition using entirely new words that the parties didn't use. And I think that's also inconsistent with section 19 of the agreement, which is the main section, which says what the parties are allowed to do. And among the things that they are allowed to do, Your Honor, is to engage in other business ventures or own another business similar to the one that is owned by TechSpec. So that, no one argues that this means anything other than business in the form of an entity. And then section 25 is an exception. Well, I guess I'm just looking here at section four purposes. The character and purposes for which the company is formed in general is to manufacture and or assemble HVAC equipment. So assuming that there were in fact activities within a location that was covered by this, why would it not cover manufacturing? It wouldn't necessarily, it could conclude manufacturing, Your Honor. I'm just pointing out that in the section of section 25, the words manufacturing don't appear at all. Well, right, nothing appears. It doesn't say whether, again, it doesn't say whether it's playing baseball or manufacturing hula hoops. My point is that section four does include what are the business activities. And it seems to me that if one substitutes in particular languages from section four, what's the problem with defining what the competitive activity is? Because then that breeds out the second part of section 25, which is that the business is located in any county. No, I said putting that aside, focusing on the nature of the competitive activity. What's the problem? You seem to be suggesting that you can't ban manufacturing. And it seems to me that section four talks specifically about manufacturing. Your Honor, my point was that the word manufacturing don't appear in- Right, and my point is who cares? I know. Why it matters. Well, it matters because the court took out the idea of a competition and also the concept important of the location. So the business- I've asked you to put aside the location and isolate the variables and just talk about the nature of the anti-compet- or the activity, which is the subject, properly or not, of the anti-compete clause. My question is, you seem to be suggesting that manufacturing, no matter where it occurs, can't be the subject of the injunction. I'm asking you, why not? It can be the subject of the injunction if the manufacturing occurs in a county in which TechSpec is doing or has done business. But TechSpec is- Brea, the company that Mr. Giannulli was operating, was in Richmond County, where TechSpec has never done business, and that's not in dispute. Mr. Manio, I have a simple question about the status of the litigation. What exactly- How would you describe the state of play and what is it that you want us to do? What's the decree that you would wish us to enter? We would like the court to vacate the preliminary injunction on the grounds that, as a matter of law, and the court reviews that de novo, that the district court misconstrued the terms of the non-compete. Am I right that there was no evidentiary hearing before the entry of the preliminary injunction? There was not, Your Honor. That is correct. And did you ask for one, or was there an objection to the absence of an evidentiary hearing? There was not an opportunity for one. The court- The parties briefed the papers, and then the court issued its decision after an oral argument. The parties didn't- Neither party asked for an evidentiary hearing, although there were facts in dispute that I think called for an evidentiary hearing. But wait a second. On the issue of the contract, I mean, there's no need for a hearing on that. Neither side is arguing that there should have been extrinsic evidence of what the contract means, right? You agree that the court should just decide that, right? I think that that's clear as a matter of law, Your Honor. That's correct. The evidence- So then what would the hearing have been about? About whether there's reparable harm? Like, is that what the hearing would have been about? Among other things, yes. The other prongs of the test, the reparable harm, and whether there was a proper basis for a bond, which the court ignored entirely. Well, at the bond, oh, sorry, but in the reparable harm, they did put in this declaration. So I know you say, like, it's not enough that two customers wasn't enough to show a longstanding relationship, but there was no dispute that that had happened, right? There was no dispute to those companies, Your Honor, but there was a dispute as to the nature of the relationship with those two customers. And Mr. Dinolo put in a competing affidavit. So basically the court was faced with dueling affidavits, one from Mr. Anfis and one from Mr. Dinolo. And the court essentially chose to credit the affidavit testimony, the declaration testimony of Mr. Anfis and ignore that of Mr. Dinolo. So we submit that at a minimum that it was necessary to have a evidentiary hearing. But at the end of the day, it was actually the, you know, the burden was on the moving party and they didn't meet it. But- Can I just ask you about the unclean hands argument? I know this happened after your briefing, but in light of Judge Rakoff's finding that your clients had failed to demonstrate that SRS had violated the non-compete covenant, isn't that arguing kind of gone at this point? Your Honor, I'd have to admit that it has less force. The only thing I will say is that Judge Rakoff's decision is not binding on this court. I understand. And it was based after, you know, there was an evidentiary hearing on that issue, but you know, it was on a preliminary injunction. We still haven't had discovery in this case. It was all done prior to discovery. All right. I don't think the court needs to credit what Judge Rakoff said on that issue with respect to the unclean hands argument. Well, what exactly do you want from us if we do vacate, or if not vacate, remand? For what purpose? Well, our primary request is to vacate, reverse and vacate on the grounds that the court misconstrued the terms of the non-compete. To the extent that the court does, you know, finds otherwise, we think at a minimum there should, it should be remanded for an evidentiary hearing on the other issues in the case. But on the first issue, I mean, the case would be over. If we vacated and said the court misconstrued the non-compete, I mean, essentially the case is over, right? That's why the second piece is alternative to the first round, yes. We wouldn't just be vacating the injunction for further proceedings. It would be like the district court would have to essentially dismiss the lawsuit on that claim because the non-compete wouldn't apply then, right? I think ultimately if the court decides as a matter of law that that's the proper interpretation of the agreement, that that would be the logical result. Procedurally, whether Judge Rakoff would have to then, you know, have new motion practice and issue a new ruling, I'm not sure. But practically speaking, I agree with your honor. All right, thank you. Can I just clarify what I think I heard you say in response to the series of questions was that you did not ask for an evidentiary hearing before the district court. Did I hear that correctly? Yes, your honor. Thank you. All right, Mr. Meltzer, you're up. Good afternoon, your honors. May it please the court. My name is Jason Meltzer of the law firm of Coleshots PC, and I represent the appellees, TechSpec, LLC, Robert Senior, Richard Rose, and Ralph Schlenker. We respectfully ask the court to affirm the district court's preliminary injunction order, which correctly enjoined Michael Donilow from competing with TechSpec in counties where TechSpec is doing or has done business in accordance with the plain language of the operating agreement. I'll address three points. First, the district court correctly interpreted the non-compete. Second, plaintiffs demonstrated irreparable harm. And third, the remaining preliminary injunction factors, such as balancing of the equities, public interest, unclean hands, were properly resolved by the district court. Your honor, the central question on this appeal is straightforward. Did the district court err in interpreting section 25.1 of TechSpec's operating agreement? We respectfully submit that it did not. The non-compete provides that each member shall not, quote, directly or indirectly, individually or in conjunction with any person or person's firm, partnership, corporation, in any other manner whatsoever, carry on or be engaged in or connected with any business which competes in whole or in part with TechSpec, which is located in any county in which TechSpec is doing or has done business. The district court correctly concluded that the term business in this provision refers to the act of doing business, that is, carrying on transactions, performing jobs, and working on projects, not a business entity. This interpretation is compelled by the text itself. The non-compete uses, quote, business in the same paragraph when it says, quote, any county in which TechSpec is doing or has done business. The word business in that phrase clearly means the act of conducting business, not an entity. Basic principles of contract construction require consistent usage of words within the same provision. Consider the phrase carry on. One carries on a job, a project, an activity. The district court rightly recognized that this transactional reading is a natural one, and the non-compete does not bar a, quote, unquote, transaction from competing with TechSpec, as appellants argue. Rather, it bars Mr. Donilow from carrying on or being engaged in any business, any business activity, which competes with TechSpec in counties where TechSpec operates. It is Mr. Donilow who is barred from competing, not the business entity. Appellants' interpretation, by contrast, would render the non-compete a complete nullity. Under their reading, Mr. Donilow could freely compete with TechSpec for any job in any county, including counties where TechSpec has been doing business for years, such as New York County. Simply by headquartering the Brea entities in Richmond County, where TechSpec has no operations. That interpretation is both facially absurd and contrary to the purpose of section 25.1. Appellants lean heavily on section 19 of the operating agreement, which permits members to, quote, engage in other business ventures of every nature, close quote. But section 19 expressly states that it is subject to section 25, the non-compete. The district court harmonized these provisions. It held that Mr. Donilow may participate in a business entity that competes with TechSpec, so long as he does not conduct business in any county where TechSpec is doing or has done business. That is a narrow, well-reasoned construction, exactly the kind of narrow interpretation that appellants themselves claim the law requires. Turning to the issue of irreparable harm, the district court did not abuse this discretion. It is well-established in this circuit that the loss of client relationships and customer goodwill that results from the breach of a non-compete clause generally constitutes irreparable harm. Here, the evidence showed that Mr. Donilow used his insider knowledge as a TechSpec member and manager to divert actual and potential TechSpec customers to the Brea entities in New York County. John Anthes, a consulting design engineer, attested under penalty of perjury that Mr. Donilow poached at least two projects, the 200 Park Avenue project, where TechSpec had been recommended as the HVAC manufacturer, and the 730 3rd Avenue Teachers Insurance Building, where TechSpec had already provided 223 HVAC units worth $800,000. These are not illusory opportunities. TechSpec was recommended by the consulting engineer for the 200 Park Avenue job and had an existing long-running relationship at 730 3rd Avenue. Appellants attacked the Anthes declaration as hearsay, but this circuit routinely considers hearsay evidence in determining whether to grant preliminary injunctive relief. Mr. Anthes' declaration was sworn under penalty of perjury and was competent evidence at this stage of the proceeding. Turning to the balance of the equities and unclean hands, and I agree, I believe it was your Honor, Judge Bianco, who pointed out that Judge Rakoff recently addressed the allegation that my clients have unclean hands and that no evidence was submitted by the appellant, challenging that at an evidentiary hearing with multiple witnesses under oath. So the injunction merely enforces the non-compete as written. It does not- I want to ask you, Mr. Melzer, I want to ask you about the bond because they did request a bond, and as you know, under Rule 65C, there does, you know, it says there should be a security, although we have case law that says a judge in his discretion could determine that a bond is not required depending on the circumstances. But here, there was no determination at all. So why don't we have to remand for the court to consider whether there should be a bond, and if so, what that amount should be? Well, I think there was actually evidence, is there evidence, on the record regarding this issue, because Mr. Donolo himself, in a sworn statement, testified that he is not employed or compensated by any of the Brea entities. He's not making any money and wasn't making any money from the Brea entities. So what potential harm could he face by the entry of this order that just requires him to do what the plain language- We've never, this would be, you can correct me if I'm wrong, like you said in the Corning case in 2004, that even though it's within a court's discretion, it has to make a finding that the bond is unnecessary. You're suggesting, well, there's evidence in the record that could support such a finding, but we have never said, well, when that finding has not been made, we'll do like a harmlessness, which is what you're arguing here. I think we've never said that before, right? Correct, Your Honor. All right. Do you want to address the issue of, even though there's no request for hearing, Mr. Matteo suggested that the district court discredited Mr. Donolo's declaration, and that if he was going to do that, there should have been a hearing. Do you want to address that? I think injunctions, preliminary injunctions is decided all the time on declarations. And I think that all of the evidence that would have been adduced at a hearing was adduced through these declarations. And it's not, it's really the facts themselves are not in dispute. So it's not a situation where the judge needed to hear, smell, and judge veracity of the witnesses and whatnot. The facts largely are not in dispute. I think my colleague discussed maybe the description of the nature of the relationship or some characterization of it. But we have evidence. There's no dispute that, for instance, TxSPEC provided many, many units to one of the projects. So these are ongoing relationships. The facts are not in dispute. There's no need to assess credibility on the record. The declarations are more than adequate. So in your view, it's not a preliminary injunction that we have before us. We have a final injunction, is that right? It's preliminary in the sense that it lasts for the life of the case, right? It'll be determined at the end of the case if it gets converted into a permanent injunction. What will be the end of the case? Tell us more about where we go from here that in theory would take you to a final injunction. I think it would be putting on evidence of our damages. And we have a number of other business tort claims that are asserted, including the Defense of Trade Secret Protections Act claims and other IP-related claims and the Faithless Servant Doctrine claims. Your Honors, you may recall the appellants in this case were, in all my years practicing, I've never seen them, they were caught red-handed. Like we walked in and there they were in their competing business while one was a managing member of the LLC, TechSpec. The others were employees. They were all being paid. They were currently on the payroll of TechSpec. And there they were in the offices of their competing entity carrying on business and trying to sell units within New York County. So there's a host of issues that can be determined at trial, most importantly, which is the nature of the damages and the extent of it. So you, of course, would want a remand of some sort. What would that remand consist of? Your Honor, just a simple enforcement of the injunction that's been entered by Judge Reardon. All right. Thank you, Mr. Melser. Mr. Matteo, you have two minutes. Before, I just wanted to ask you, Mr. Matteo, I had the same thought that Mr. Melser made. I mean, if we, if this, if the covenant were to read the way you're suggesting, wouldn't it be the worst covenant ever agreed to? Like it would essentially mean nothing. It'd mean that your client could just locate their business in Staten Island and compete in a competition in all the other counties in New York City where his client is operating. It would be useless, right? Well, Your Honor, that, Mr. Melser's firm is the one that drafted this agreement. That's what we think it says by its plain terms. And we think there was good reason for that because at the time that the parties entered into this operating agreement, the other three members, Mr. Melser's other clients, had competing businesses that were not located in counties in which TechSpec was doing or had done business. So we think it was a deliberate choice to make it a geographic location. And there's cases, and we cite them from other circuits, Your Honor, where courts have found that location-based restrictions are what the parties agreed to and what should be enforced. So in this case, we think, Your Honor, whether the parties could have agreed to something else, they didn't. And we think the agreement is clear according to its terms. And the courts, at that point, the court's function is to apply the agreement as written and not to try to rewrite the agreement under the guise of what the court may think the parties would have or should have agreed to. So, and again, sort of where I started here, Cole Schatz is the party who drafted this, and the other managing members, that was Cole Schatz's, they were their lawyers. So Mr. Danola was not the one who drafted this agreement. Going back a few points, I think back to the interpretation of the non-competition agreement, I think Mr. Meltzer, as an interesting tell, when he was trying to say what the agreement meant, even there, he couldn't say it by just using the words of the non-competition agreement. He had to use, to add the word activity after business, which is not something that the court, that the parties included. Had the parties wanted to make this a transaction or activity-based restriction, they easily could have done it. They would have just said, you can't engage in business activities which may compete with, or something like that. But that's not what they said. What they said is a business which competes with, and then elsewhere, they also talk about business in the sense of an entity. So I think that just underscores why the agreement, the interpretation that the plaintiffs in this case have given at the end of the district court adopted is not the, it could not be the correct one. And then separately, Your Honor, on the bonds, and I know I'm almost finished my time here, but I just request your indulgence. I agree, Your Honor, under the Corning case, the district court was required to make a determination. Whether ultimately a bond was issued, I think it's a different matter, but the determination itself had to be made. We made the request, it wasn't done. Mr. Meltzer seemed to go to the point, well, Mr. D'Onovo couldn't have been harmed because he doesn't work at Brea, the competing entity anymore. That's just false. The reason why he doesn't work there anymore is because he was forced to give up his interest in the business after he was enjoined to make sure the business could continue to operate. He was working for the business. It was his business up until that point. He was allowed to do that, we submit under the terms of the operating agreement, but the idea that, you know, even if there were a harmless error standard, which there isn't in this context, the idea that Mr. D'Onovo wasn't harmed, I think is just false. All right, thank you both. That was very helpful, reserved decision. Have a good day. Thank you very much. It's the business of the court.